ROB BONTA
Attorney General of California
KYLE A. LEWIS
Supervising Deputy Attorney General
ISHA VAZIRANI
Deputy Attorney General
State Bar No. 354914
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3478
  Fax:  (415) 703-5843
  E-mail:  Isha.Vazirani@doj.ca.gov
*Attorneys for Defendant*
*S. Tumacder*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **GONZALEZ,**<br><br>Plaintiff,<br><br>v.<br><br>**S. TUMACDER, et al.,**<br><br>Defendant. | 3:24-cv-06675-RFL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:　　The Honorable Rita F. Lin<br>Trial Date:　Not Set<br>Action Filed: September 24, 2024 |

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................... 1

Plaintiff's Allegations ..................................................................................................... 1

Statement of Facts .......................................................................................................... 2

    I.      Plaintiff's Relevant Background. ....................................................................... 2

    II.    Plaintiff's January 9, 2024 Post-Board Unit Classification Committee
           Hearing. ........................................................................................................... 2

Legal Standard ................................................................................................................ 3

Argument ........................................................................................................................ 4

    I.      Defendant Did Not Violate Plaintiff's First Amendment Rights Because
           His Conduct was Permitted Under California Regulation, Did Not
           Substantially Burden Plaintiff's Religious Exercise, and was Rationally
           Related to a Legitimate Penological Purpose. ................................................... 4

          A.     Plaintiff Bears the Burden of Disproving the Validity of
                California's Regulations. ........................................................................ 6

          B.     Defendant's Conduct Did Not Substantially Burden Plaintiff's
                Exercise of His Christian Faith. ............................................................ 7

          C.     Defendant's denial of Plaintiff's Request to Participate in Family
                Visiting was Reasonably Related to a Legitimate Penological
                Purpose. ................................................................................................. 8

               1.      There is a Rational Connection Between Defendant's
                       Conduct and the Legitimate Penological Purposes of
                       Following State Regulations and Maintaining Institutional
                       Safety. ....................................................................................... 9

               2.      Alternative Means of Exercising his Right to Freely
                       Exercise His Religion Remain Open to Plaintiff. ...................... 10

                 3.      Permitting Plaintiff to Participate in Family Visiting Would
                       Violate State Regulations and Jeopardize Intuitional Safety. ..... 11

                 4.      No Ready Alternatives to the Prison's Practice Exist. ................. 11

    II.    Defendant is Not Liable on Plaintiff's RLUPIA Claim Because His
           Conduct Did Not Substantially Burden Plaintiff's Religious Exercise and
            He Furthered a Compelling State Interest in the Least Restrictive Means. .......... 11

          A.     Defendant Did Not Substantially Burden Plaintiff's Religious
                 Exercise. ............................................................................................... 12

           B.     Defendant Furthered Compelling State Interests in the Least
                 Restrictive Means. ................................................................................ 13

    III.   Defendant's Refusal to Lower Plaintiff's Custody Restrictions Did Not
           Constitute a Violation of Plaintiff's Right to Due Process. ............................... 15

    IV.   Defendant is Entitled to Qualified Immunity. ................................................... 16

Conclusion ..................................................................................................................... 17

Def.'s Memorandum of Ps and As Supp. Mot. Summ. J.  (3:24-cv-06675-RFL)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Al Saud v. Days*
  50 F.4th 705 (9th Cir. 2022) .................................................................................................... 13

*Anderson v. Creighton*
  483 U.S. 635 (1987) ................................................................................................................ 16

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ............................................................................................................ 3, 4

*Ashcroft v. al-Kidd*
  563 U.S. 731 (2011) ........................................................................................................ 16, 17

*Ballentine v. Tucker*
  28 F.4th 54 (9th Cir. 2022) .................................................................................................... 17

*Beard v. Banks*
  548 U.S. 521 (2006) .................................................................................................................. 6

*Bell v. Wolfish*
  441 U.S. 520 (1979) .......................................................................................................... 9, 13

*Ben-Binyamin v. Ramirez*
  No. 218CV01015KJMJDPPC, 2022 WL 2954945 (E.D. Cal. July 26, 2022)
  (Peterson, J.) ................................................................................................................ 8, 9, 10

*Boyd v. Benton Cnty.*
  374 F.3d 773 (9th Cir. 2004) .................................................................................................. 17

*Burwell v. Hobby Lobby Stores, Inc.*
  573 U.S. 682 (2014) ................................................................................................................ 14

*Butz v. Economou*
  438 U.S. 478 (1978) ................................................................................................................ 16

*Celotex Corporation v. Catrett*
  477 U.S. 317 (1986) .................................................................................................................. 3

*Cutter v. Wilkinson*
  544 U.S. 709 (2005) ........................................................................................................... 5, 14

*DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*
  489 U.S. 189 (1989) ................................................................................................................ 13

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Eisenberg v. Ins. Co. of N. Am.*
815 F.2d 1285 (9th Cir. 1987) ................................................................................ 4

*Espinoza v. Benoit*
108 F. App'x 869 (5th Cir. 2004) .......................................................................... 15

*Greene v. Solano Cnty. Jail*
513 F.3d 982 (9th Cir. 2008) ................................................................................ 12

*Grimes v. Dir., Tex. Dep't of Crim. Just.-Corr. Insts. Div.*
U.S. Dist. LEXIS 237150 (E.D. Texas 2023) ...................................................... 15

*Hartmann v. California Dep't of Corr. & Rehab.*
707 F.3d 1114 (9th Cir. 2013) ................................................................................ 5

*Haynes v. Hedgpeth*
No. 12-CV-00363-JST (PR), 2015 WL 1138411 (N.D. Cal. Mar. 12, 2015) ......... 6

*Holt v. Hobbs*
574 U.S. 352 (2015) ...................................................................................... 12, 14

*Johnson v. Baker*
23 F.4th 1209 (9th Cir. 2022) .............................................................................. 12

*Jones v. N. Carolina Prisoners' Lab. Union, Inc.*
433 U.S. 119 (1977) .............................................................................................. 6

*Jones v. Williams*
791 F.3d 1023 (9th Cir. 2015) ...................................................................... 5, 6, 7

*Lal v. California*
746 F.3d 1112 (9th Cir. 2014) .............................................................................. 16

*Longoria v. Pinal Cnty.*
873 F.3d 699 (9th Cir. 2017) ............................................................................... 16

*Malik v. Brown*
65 F.3d 148 (9th Cir. 1995) ................................................................................... 5

*O'Lone v. Est. of Shabazz*
482 U.S. 342 (1987) ............................................................................................... 5

*Ohno v. Yasuma*
723 F.3d 984 (9th Cir. 2013) .............................................................................. 5, 7

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Overton v. Bazzetta*
  539 U.S. 126 (2003).................................................................................................. 6, 13

*Pearson v. Callahan*
  555 U.S. 223 (2009)...................................................................................................... 16

*Pell v. Procunier*
  417 U.S. 817 (1974)........................................................................................................ 9

*Ramirez v. Collier*
  142 S. Ct. 1264 (2022) ................................................................................................. 12

*San Jose Christian Coll. v. City of Morgan Hill*
  360 F.3d 1024 (9th Cir. 2004) ...................................................................................... 12

*Sandin v. Conner*
  515 U.S. 472 (1995)...................................................................................................... 15

*Scott v. Harris*
  550 U.S. 372 (2007)........................................................................................................ 4

*Shakur v. Schriro*
  514 F.3d 878 (9th Cir. 2008) ..................................................................................... 6, 14

*Sherman-Bey v. Marshall*
  No. CV 09-06494 JGB RZ, 2014 WL 3557237 (C.D. Cal. July 16, 2014) ............................ 6

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*
  450 U.S. 707 (1981)...................................................................................................... 12

*Turner v. Safley*
  482 U.S. 78 (1987)................................................................................................. *passim*

*United States v. Playboy Ent. Grp., Inc.*
  529 U.S. 803 (2000)...................................................................................................... 14

*Walker v. Beard*
  789 F.3d 1125 (9th Cir. 2015) ...................................................................................... 5, 12

*Ward v. Walsh*
  1 F.3d 873 (9th Cir. 1993)........................................................................................... 6, 10

*Warsoldier v. Woodford*
  418 F.3d 989 (9th Cir. 2005)........................................................................................ 12

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Watkinson v. Alaska Dep't of Corr.*
No. 21-35084, 2022 WL 1301895 (9th Cir. May 2, 2022) ....................................................... 5

*Widmar v. Vincent*
454 U.S. 263 (1981)............................................................................................................. 13

*Wilson v. Budney*
976 F.2d 957 (5th Cir. 1992) ............................................................................................... 15

**STATUTES**

United States Code, Title 42
§ 2000cc-1(a)(2) ................................................................................................................. 14
§ 2000cc-5 ........................................................................................................................... 12

California Code of Regulations, Title 15
§ 3177.................................................................................................................................. 7, 11
§ 3177(a)(1)......................................................................................................................... 3
§ 3177(b)(1)......................................................................................................................... 14
§ 3177(b)(1)(D) ................................................................................................................... 9, 11
§ 3375.2 ............................................................................................................................... 3
§ 3375.2(a)(2) ...................................................................................................................... 3, 16
§ 3375.2(b)(28(J) ................................................................................................................ 15

California Family Code
§ 3170................................................................................................................................... 9

California Penal Code
§ 261..................................................................................................................................... 2, 7

Religious Land Use and Institutionalized Person Act (RLUIPA)...................................... *passim*

**CONSTITUTIONAL PROVISIONS**

United States Constitution
First Amendment ................................................................................................................. *passim*
Fourteenth Amendment........................................................................................................ *passim*

**COURT RULES**

Federal Rules of Civil Procedure
Rule 56(c).............................................................................................................................. 3

## INTRODUCTION

Plaintiff Eric Gonzalez ("Plaintiff") is an incarcerated individual in the custody of the California Department of Corrections and Rehabilitation (CDCR) proceeding in this action *pro se*.  He brings this action against Defendant Tumacder ("Defendant"), at all relevant times a Correctional Captain at Correctional Training Facility (CTF).  Plaintiff claims Defendant violated the First Amendment's Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Fourteenth Amendment's Due Process Clause when he denied Plaintiff's requests to participate in CDCR's family visiting program and to have his custody restrictions lowered at a Post-Board Unit Classification Committee Hearing on January 9, 2024.

Defendant is entitled to summary judgment on all claims.  Defendant's decisions during Plaintiff's hearing on January 9, 2024 were made pursuant to state regulations prohibiting sex offenders from participating in the family visiting program and from having their custody restrictions lowered beyond a certain point.  Additionally, Plaintiff's denial of Defendant's request to participate in the family visiting program did not substantially burden Plaintiff's religious exercise and, further, was rationally related to a legitimate penological purpose in enforcing state regulations and maintaining institutional safety.  Moreover, Plaintiff does not have a protected liberty interest in his custodial classification.  Defendant's denial of Plaintiff's request that his custody restrictions be lowered also did not subject him to hardship beyond those ordinary to prison life.  Finally, Defendant is entitled to qualified immunity.

Accordingly, Defendant respectfully requests that his motion for summary judgment be granted on all claims and this matter be dismissed.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he is a Christian (Declaration of I. Vazirani Ex. A ("Deposition of Plaintiff") at 19; ECF No. 2 at 3) and that worshiping with his family members is a component of the practice of his religion (Deposition of Plaintiff at 26, 39-40; ECF No. 2 at 3).  Plaintiff claims that at his "Post Board Review" hearing on January 9, 2024, Defendant, a Correctional Captain at CTF,  denied his request to participate in CDCR's family visiting program.  (Complaint, ECF No. 2.)  Plaintiff's deposition testimony confirms his understanding that his conviction history makes

1

him ineligible for family visiting (Deposition of Plaintiff at 23, 24-33), but he still claims Defendant violated his right to freely exercise his religion under the First Amendment and his rights under RLUIPA.  (ECF No. 2.)

Plaintiff also claims that at the same hearing on January 9, 2024, Defendant denied his request to have his custody restrictions lowered, against the recommendation of the Board of Parole Hearings.  (ECF No. 2.)  Plaintiff again understands that his conviction history makes him ineligible for lower custody restrictions.  (Deposition of Plaintiff at 47.)  Yet he still claims Defendant violated his right to due process under the Fourteenth Amendment when he denied this request.  (ECF No. 2.)

## STATEMENT OF FACTS

### I.    PLAINTIFF'S RELEVANT BACKGROUND.

Plaintiff is an incarcerated individual serving a life sentence with the possibility of parole.  (Declaration of I. Vazirani ("Vazirani Decl.") Ex. E; Vazirani Decl. Ex. G.)  He is currently serving a sentence for Attempted Kidnapping with enhancements.  (Declaration of L. Nicassio ("Nicassio Decl.") at ¶ 13; Nicassio Decl. Ex. A.)  Plaintiff previously served a term in state prison pursuant to convictions for four counts of rape under California Penal Code 261.  (Nicassio Decl. ¶ 11; Deposition of Plaintiff at 10; Vazirani Decl. Ex. F.)  Plaintiff is a sex offender, with a "R" custody-suffix, "VIO" administrative determinant and a placement score of 19.  (Vazirani Decl. Ex. E, G.)

### II.    PLAINTIFF'S JANUARY 9, 2024 POST-BOARD UNIT CLASSIFICATION COMMITTEE HEARING.

Plaintiff had a scheduled Post-Board Unit Classification Committee Hearing on January 9, 2024, following an appearance before the Board of Parole Hearings.  (Declaration of S. Tumacder ("Tumacder Decl.") ¶ 2; ECF No. 2; Vazirani Decl. Ex. G.)  Defendant, then a Correctional Captain at CTF, where Plaintiff was housed, presided over the hearing.  (Tumacder Decl. ¶ 3; Vazirani Decl. Ex. G; ECF No. 2.)  Unit Classification Committee Hearings were for correctional staff to review inmates' case factors to ensure they were properly endorsed to institutions and housed.  (Tumacder Decl. ¶ 2.)  Post-Board Unit Classification Committee Hearings were to

notify inmates of the denial of parole and document the denial of parole with Unit Classification Committee Action.  (Tumacder Decl. ¶ 3.)

During Plaintiff's January 9, 2024 Post- Board Unit Classification Committee Hearing, he requested to be allowed to participate in CDCR's family visiting program.  (ECF No. 2 at 3; Tumacder Decl. ¶ 4; Vazirani Decl. Ex. B, G.)  Defendant informed Plaintiff that he was ineligible for the family visiting program due to his sex offender status.  (Tumacder Decl. ¶ 4; Deposition of Plaintiff at 24; Vazirani Decl. Ex. G.)  California Code of Regulations Title 15 § 3177(a)(1) prohibits family visiting for inmates convicted of any sex offense.  (Vazirani Decl. Ex. C.)  Plaintiff also requested that his custody restrictions be lowered.  (ECF No. 2 at 3.)  Defendant denied this request, pursuant to California regulations that removal of his "VIO" administrative determinant only be considered at an annual review, not a Post-Board Unit Classification Committee Hearing, and that due to his sex offender status, his placement score not be lowered below 19.  (Tumacder Decl. ¶ 6; Cal. Code of Regs. Title 15 § 3375.2.)  Due to his sex offender history, Plaintiff is ineligible for a placement score lower than 19 (Cal. Code. Regs. Tit. 15 § 3375.2(a)(2); Vazirani Decl. Ex. I.)

During his deposition, Plaintiff confirmed his understanding of the relevant state regulations and CDCR policies.  (Deposition of Plaintiff at 33, 48, 53.)

## LEGAL STANDARD

Summary judgment is appropriate "where there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986), the Supreme Court held that Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  The non-moving party's failure of proof on an essential element of its claim renders all other facts immaterial. *Id.*  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the Supreme Court made clear that a party opposing a motion for summary judgment must affirmatively show that a dispute about a material fact is

3

genuine, such that a reasonable jury could return a verdict for the non-moving party. This standard requires that if any evidence produced in opposition to a motion is "merely colorable" or "not significantly probative," the motion for summary judgment must be granted. *Id.* at 249; *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288 (9th Cir. 1987). If the non-moving party's version of facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**ARGUMENT**

Defendant is entitled to summary judgment on all claims because the undisputed facts establish that he did not violate Plaintiff's rights under the First Amendment, RLUIPA, or the Fourteenth Amendment. Specifically, summary judgment should be granted on Plaintiff's First Amendment claim because Defendant's denial of Plaintiff's request to participate in family visiting was pursuant to state regulations, did not substantially burden Plaintiff's religious exercise, and was rationally related to a compelling state interest. Summary judgment should be granted on Plaintiff's RLUIPA claim because his denial of Plaintiff's request to participate in family visiting did not substantially burden Plaintiff's religious exercise and furthered a compelling state interest in the least restrictive means. Additionally, summary judgment should be granted on Plaintiff's Fourteenth Amendment claim because Defendant's denial of Plaintiff's request for lower custody restrictions was pursuant to state regulations, Plaintiff does not have a protected liberty interest in his custodial classification, and Defendant's conduct did not subject Plaintiff to hardship beyond that associated with ordinary prison life. Finally, Defendant is entitled to qualified immunity on all claims. Accordingly, Defendant's motion for summary judgment should be granted.

I. **DEFENDANT DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS BECAUSE HIS CONDUCT WAS PERMITTED UNDER CALIFORNIA REGULATION, DID NOT SUBSTANTIALLY BURDEN PLAINTIFF'S RELIGIOUS EXERCISE, AND WAS RATIONALLY RELATED TO A LEGITIMATE PENOLOGICAL PURPOSE.**

Defendant's denial of Plaintiff's request to participate in family visiting did not violate Plaintiff's right to freely exercise his religion under the First Amendment because it was pursuant

4

to state regulations, did not substantially burden Plaintiff's religious exercise, and rationally related to a legitimate penological purpose.

The First Amendment states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.  The Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  Although incarcerated individuals retain First Amendment protections, their right "is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987)).

To state a free exercise claim, a plaintiff must prove two threshold requirements: "(1) 'the claimant's proffered belief is sincerely held'; and (2) 'the claim is rooted in religious belief, not in purely secular philosophical concerns." *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (brackets omitted) (quoting *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), *supplemented*, 65 F.3d 148 (9th Cir. 1995)).  To establish a Free Exercise Clause violation, the incarcerated individual "must show that the government action in question substantially burdens the person's practice of her religion. *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  "A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 1031–32 (ellipses and brackets omitted) (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

If the burden on plaintiff's religious practice is substantial, then "a prisoner's Free Exercise Clause claim will fail if the State shows that the challenged action is 'reasonably related to legitimate penological interests.'" *Walker*, 789 F.3d at 1138 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) ("[A]lleged infringements of prisoners' free exercise rights [are] 'judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'"); *Watkinson v. Alaska Dep't of Corr.*, No. 21-35084, 2022 WL 1301895, at *1 (9th Cir.

5

May 2, 2022).  This standard is necessary because "prison administrators, and not the courts, are to make the difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89 (ellipses and brackets omitted) (quoting *Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 128 (1977)).

Courts consider several factors when analyzing "the reasonableness of practices that burden prisoners' constitutional rights":

> (1) whether there is a "valid, rational connection" between the conduct of prison officials and "the legitimate governmental interest put forward to justify it"; (2) "whether there are 'alternative means of exercising the right that remain open to prison inmates' "; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" to the prison's practice.

*Jones*, 791 F.3d at 1032 n.5 (quoting *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993)); *see also Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Turner*, 482 U.S. at 89–90.

### A.    Plaintiff Bears the Burden of Disproving the Validity of California's Regulations.

Although courts "must draw 'all justifiable inferences' in [the plaintiff's] 'favor'" in the summary judgment context, the "inferences must accord deference to the views of prison authorities." *Beard v. Banks*, 548 U.S. 521, 529–30 (2006) (quoting *Anderson*, 477 U.S. at 255) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)); *see also Haynes v. Hedgpeth*, No. 12-CV-00363-JST (PR), 2015 WL 1138411, at *7 (N.D. Cal. Mar. 12, 2015).  "Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard*, 548 U.S. at 530.  The plaintiff bears the burden to disprove the validity of prison regulations. *Overton*, 539 U.S. at 132; *see also Sherman-Bey v. Marshall*, No. CV 09-06494 JGB RZ, 2014 WL 3557202, at *4–7 (C.D. Cal. Mar. 14, 2014) (recommending the district court grant defendants' summary judgment motion where plaintiff brought a Free Exercise claim after prison officials prevented him from ordering

and wearing a red fez), *report and recommendation adopted*, 2014 WL 3557237 (C.D. Cal. July 16, 2014).

Here, California Code of Regulations, Title 15, § 3177 prohibits participation in family visiting for "incarcerated persons convicted of . . . any sex offense." Plaintiff has a prior conviction for a sex offense. (Vazirani Decl. Ex. F.) Plaintiff bears the burden of disproving the validity of California's regulation preventing him from participating in family visiting and fails to do so.

Although Plaintiff produced a CDCR 128-B Chrono from his inmate Central File purportedly indicating his eligibility for family visiting (Vazirani Decl. Ex. H), the document fails to show that Plaintiff is eligible for family visiting or that the regulations enforced by Defendant were invalidly applied. The document is not signed by Plaintiff and is dated July 18, 1994. (*Id.*) But from at least June 7, 1997 to present, regulations prohibit family visits for inmates convicted of rape under Penal Code section 261. (Declaration of C. Baeta ("Baeta Decl."); Declaration of M. Carrillo ("Carrillo Decl.").) Plaintiff was previously convicted under Penal Code section 261. Thus, Defendant properly applied a valid regulation in this case. (Vazirani Decl. Ex. F; Nicassio Decl.) Because Plaintiff cannot satisfy his burden in proving the invalidity of the state's regulations, he cannot prevail on summary judgment on his First Amendment claim.

**B.      Defendant's Conduct Did Not Substantially Burden Plaintiff's Exercise of His Christian Faith.**

A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones*, 791 F.3d at 1031–32 (ellipses and brackets omitted) (quoting *Ohno*, 723 F.3d at 1011). Defendant's denial of Plaintiff's request to participate in the family visiting program did not substantially burden the exercise of his Christian faith, as there is no evidence that it coerced Plaintiff to act contrary to his faith or exert pressure on Plaintiff to modify his behavior or violate his beliefs.

While Plaintiff claims that he "requested to participate in the Family Visiting Program in order to practice his Christian religion of privately worshipping with family members" (ECF No.

7

2 at 3), he stated in his deposition that he has been  a practicing Christian for "about 28 years" (Deposition of Plaintiff at 19), has not had family visits while serving his current term (Deposition of Plaintiff at 30), and that he practices his religion "on a daily basis" by "respect[ing] women," not lying, and fasting.  (Deposition of Plaintiff at 22).  Plaintiff discussed practicing his religion "through reading scriptures Bible reading, Bible studying." (*Id.*)  He further stated that the practice of his Christian faith is "not one set thing that you do, it's a lifestyle."  (Deposition of Plaintiff at 22).  Plaintiff has, by his own admission, been a practicing Christian for "about 28 years" without a family visit.  He details the numerous other ways in which he can freely exercise his Christian faith.  That Plaintiff can practice his religion without family visits shows that he was not substantially burdened by Defendant's denial of his request to participate in family visiting.

Further, Plaintiff acknowledges the limitations posed by his incarceration to his religious exercise.  During his deposition, he stated "But in here, you're limited.  . . . you can't do what I want to as far as practicing my religion."  (Deposition of Plaintiff at 23.)  In addition, other than the discussion during his deposition about how he practices his religion and the role of family visiting (Deposition of Plaintiff at 22, 39-40), Plaintiff neglects to produce any religious or other authority indicating the burden that Defendant's denial of his request to participate in family visiting places on the practice of his religion.  Defendant's denial of Plaintiff's request to participate in the family visiting program therefore did not substantially burden Plaintiff's ability to freely exercise his religion and Defendant's motion for summary judgment should be granted.[1]

### C. Defendant's denial of Plaintiff's Request to Participate in Family Visiting was Reasonably Related to a Legitimate Penological Purpose.

Even if Defendant's conduct did substantially burden Plaintiff's religious exercise, Defendant is still entitled to summary judgment because his conduct was reasonably related to the legitimate penological purposes of following state regulations and maintaining institutional safety.  *See Ben-Binyamin v. Ramirez*, No. 218CV01015KJMJDPPC, 2022 WL 2954945, at *2

---

[1] Defendant declines to address the "sincerity" requirement for free exercise claims under the First Amendment in this motion but reserves the right to address this element in future filings or at trial.

8

(E.D. Cal. July 26, 2022) (Peterson, J.) ("Even a substantial burden on an inmate's religion is permitted by a prison regulation that 'is reasonably related to legitimate penological interests.'" (quoting *Turner*, 482 U.S. at 89)), *report and recommendation adopted*, 2022 WL 4096861 (E.D. Cal. Sept. 7, 2022).  Analysis of each of the *Turner* factors demonstrates that Defendant's denial of Plaintiff's request to participate in family visiting was reasonably related to a legitimate penological purpose.

### 1. There is a Rational Connection Between Defendant's Conduct and the Legitimate Penological Purposes of Following State Regulations and Maintaining Institutional Safety.

Analysis of the first *Turner* factor favors Defendant because Defendant's denial of Plaintiff's request to participate in the family visiting program was rationally related to the legitimate penological purposes of following state regulations and maintaining institutional safety.  *See Bell v. Wolfish*, 441 U.S. 520, 546–47, (1979) ("Central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." (brackets omitted) (quoting *Pell v. Procunier*, 417 U.S. 817, 823 (1974))); *Ben-Binyamin*, 2022 WL 2954945, at *3 ("It cannot be disputed that ensuring prison safety and security are legitimate state interests.").

Here, the regulations prohibiting inmates convicted of a sex offense serve the legitimate penological purpose of maintaining institutional safety.  This is indicated by the language in California Code of Regulations, Title 15, § 3177(b)(1)(D), which states "Family visiting shall be restricted as necessary to maintain order, the safety of persons, the security of the institution/facility, and required prison activities and operations, pursuant to section 3170." Family visiting is permitted for several other classes of inmates, so long is it does not threaten "order, the safety of persons, the security of the institution/facility, and required prison activities and operations."  Accordingly, in denying Plaintiff's request to participate in family visiting pursuant to state regulations, Defendant's conduct was rationally related to the legitimate penological purpose of maintaining institutional safety.

Defendant's conduct was also rationally related to the legitimate penological purpose of following state regulations. His decision regarding Plaintiff's request to participate in family visiting at Plaintiff's January 9, 2024 Post-Board Unit Classification Hearing was pursuant to relevant regulations and policy. (Tumacder Decl. ¶ 2; Vazirani Decl. Ex. B C, F, G; Carrillo Decl.) Defendant was acting with the legitimate penological purpose of following pertinent state regulations, and his conduct was rationally related to this goal. Accordingly, analysis of the first *Turner* factor weighs in Defendant's favor.

**2.    Alternative Means of Exercising his Right to Freely Exercise His Religion Remain Open to Plaintiff.**

Analysis of the second *Turner* factor also favors Defendant. Under the second factor, courts examine "whether the inmates have been denied all means of religious expression"—and "not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected." *Ben-Binyamin*, 2022 WL 2954945, at *3 (quoting *Ward*, 1 F.3d at 877).

Here, alternative means of exercising his right to freely exercise his religion remain available to Plaintiff. Plaintiff has not been denied all means of religious expression. Indeed, Plaintiff freely exercised his religion for approximately twenty-eight years prior to this lawsuit. (Deposition of Plaintiff at 19.) He describes practicing his religion, within the constraints posed by his incarceration, "on a daily basis" by "respect[ing] women," not lying, and fasting. (Deposition of Plaintiff at 22.) He further practices his religion through reading scriptures Bible reading, Bible studying." (*Id.*) As in *Ward*, Plaintiff "retained the ability to participate in other significant rituals and ceremonies of their faith" even though "some aspects of religious practice were impinged upon." *Ward*, 1 F.3d at 877; *Ben-Binyamin*, 2022 WL 2954945, at *3 (finding that plaintiff was not "denied all means of religious expression by defendants" when plaintiff had a kosher diet, could attend religious services, and could wear religious item in certain areas). Further, Plaintiff provides no religious authority indicating that family visiting is crucial to the practice of his Christian faith. Analysis of the second *Turner* factor therefore weighs in Defendant's favor.

10

### 3.    Permitting Plaintiff to Participate in Family Visiting Would Violate State Regulations and Jeopardize Intuitional Safety.

Analysis of the third *Turner* factor additionally favors Defendant.  Permitting Plaintiff to participate in family visiting would both violate state regulations pertaining to family visiting in state prisons and jeopardize the institutional safety the regulations intend to maintain.  (Vazirani Decl. Ex. C; Cal. Code of Regs. Tit. 15 § 3177(b)(1)(D).)  If Defendant had granted Plaintiff's request to participate in the family visiting program, he would be doing so in violation of state regulations, which prohibit family visiting for inmates convicted of a sex offense.  (Carrillo Decl. ¶¶ 5-7.) In addition, allowing Plaintiff to participate in family visiting would jeopardize intuitional safety, as the state regulations were implemented in order to maintain institutional safety.  The third *Turner* thus weighs in favor of Defendant.

### 4.    No Ready Alternatives to the Prison's Practice Exist.

Finally, the fourth *Turner* factor also favors Defendant.  California Code of Regulations, Title 15, § 3177 explicitly prohibits family visiting for inmates convicted of "any sex offense," a category within which Plaintiff falls.  (Vazirani Decl. Ex. C, F.)  Defendant, a Correctional Captain, was acting pursuant to this regulation when he denied Plaintiff's request to participate in the family visiting program.  (*Id.*; Tumacder Decl. ¶¶ 4-5; Carrillo Decl.)  As a Correctional Captain, Defendant made decisions pursuant to intuitional policy and regulations (Tumacder Decl. ¶¶ 2, 5; Carrillo Decl.) and no alternative to following regulations existed in this instance. Accordingly, analysis of the fourth factor weighs in favor of Defendant.

Analysis of all four *Turner* factors weigh in favor of Defendant.  Accordingly, even if Defendant's conduct did substantially burden Plaintiff's exercise of his religion, Defendant is entitled to summary judgment on Plaintiff's First Amendment claim.

**II.    DEFENDANT IS NOT LIABLE ON PLAINTIFF'S RLUPIA CLAIM BECAUSE HIS CONDUCT DID NOT SUBSTANTIALLY BURDEN PLAINTIFF'S RELIGIOUS EXERCISE AND HE FURTHERED A COMPELLING STATE INTEREST IN THE LEAST RESTRICTIVE MEANS.**

Defendant is not liable on Plaintiff's RLUPIA claim because he did not substantially burden Plaintiff's religious exercise and he furthered a compelling state interest in the least

11

restrictive means.  To state a RLUPIA claim, Plaintiff must show (1) a religious exercise grounded in (2) sincerely held religious belief that (3) the challenged governmental actions substantially burdened.  *Holt v. Hobbs,* 574 U.S. 352, 360–61 (2015); *Walker v. Beard,* 789 F.3d 1125, 1134 (9th Cir. 2015).  A showing of all three are necessary to shift the burden on the government to justify its challenged action.  *Holt,* 574 U.S. at 362*; Walker,* 789 F.3d at 1134.

A substantial burden is something akin to "a significantly great restriction or onus upon" religious exercise.  *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (relying on *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (interpreting substantial burden in land use context under 42 U.S.C. § 2000cc-5)).  It may also exist "'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Id.* (alteration in original) (quoting *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) (interpreting burden in the First Amendment context)).  An outright ban on religious exercise can be a substantial burden.  *See Ramirez v. Collier*, 142 S. Ct. 1264, 1278–1281 (2022); *Johnson v. Baker*, 23 F.4th 1209, 1215–16 (9th Cir. 2022); *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (total ban on group worship).  Unavailability of any religious accommodation can also substantially burden religious exercise.  *Holt*, 574 U.S. at 369; *Warsolider*, 418 F.3d at 996.

**A.    Defendant Did Not Substantially Burden Plaintiff's Religious Exercise.**

Defendant did not substantially burden Plaintiff's religious exercise.  By denying Plaintiff's request to participate in the family visiting program, Defendant did not place "a significantly great restriction or onus upon" Plaintiff's religious exercise; Plaintiff was, in fact, able to continue to practice his religion and maintain his "lifestyle" "on a daily basis" by "respect[ing] women," not lying, and fasting.  (Deposition of Plaintiff at 22.)  Plaintiff also practiced his religion "through reading scriptures Bible reading, Bible studying."  (*Id.*)  Plaintiff had been practicing his religion for approximately twenty-eight years when Defendant denied his request to participate in family visiting, indicating that no conduct by Defendant implemented a total ban on Plaintiff's religious exercise.  (Deposition of Plaintiff at 19.)

12

Additionally, the regulations that Defendant was applying in denying Plaintiff's request to participate in family visiting applied to all inmates, regardless of their specific religious beliefs or practices.  (Vazirani Decl. Ex. C.)  Defendant therefore had no reason to pressure Plaintiff to act in a manner that violated his religion or cause Plaintiff to modify his behavior.  Accordingly, Defendant did not substantially burden Plaintiff's religious exercise.[2]

### B.    Defendant Furthered Compelling State Interests in the Least Restrictive Means.

Even if the Court finds that Defendant's conduct substantially burdened Plaintiff's religious exercise, he is not liable for doing so if he furthered compelling state interests in the least restrictive means.

Here, Defendant furthered a compelling state interest in enforcing state regulations and maintaining institutional safety.  On a general level, complying with the law, or avoiding liability thereunder, is at times a compelling governmental interest. *Widmar v. Vincent*, 454 U.S. 263, 275 n.17 (1981); *Al Saud v. Days*, 50 F.4th 705, 709–711 (9th Cir. 2022).  Defendant's decision to deny Plaintiff's request to participate in family visiting was pursuant to California regulations prohibiting inmates convicted of a sex offense from participating in the family visiting program. (Tumacder Decl.  ¶¶ 4-5.)  Defendant was acting in furtherance of the compelling government interest of complying with applicable state regulations when he denied Plaintiff's request.

In addition, Defendant acted in furtherance of the compelling governmental interest in maintaining institutional safety when he denied Plaintiff's request to participate in the family visiting program.  Within the correctional setting, there are unique compelling governmental interests. *See generally Overton v. Bazzetta*, 539 U.S. 126, 133 (2003) (maintaining prison security and preventing future crimes); *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) (protecting prisoners' welfare); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (ensuring prison staff's safety).  Regulations restricting which categories of inmates can

---

[2] Defendant declines to address the "sincerity" requirement for free exercise claims under RLUIPA in this motion but reserves the right to address this element in future filings or at trial.

13

participate in CDCR's family visiting program are intended to maintain institutional safety and security, and enforcing such regulations therefore serves a compelling governmental interest.

In addition, any substantial burden on incarcerated individual's religious exercise must be the least restrictive means to furthering identified compelling governmental interests.  42 U.S.C. § 2000cc-1(a)(2).  The focus is on whether the challenged governmental action achieves a compelling interest in its application to the affected individual.  *Holt*, 574 U.S. at 362–63 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)).  Specifically, courts "'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants" and "'look to the marginal interest in enforcing' the challenged government action in that particular context."  *Id.* at 363 (alteration in original) (quoting *Hobby Lobby*, 547 U.S. at 726–27)).  Least restrictive means essentially equals a total absence of alternative ways to achieve compelling state interests.  *Id.* at 364–65 (quoting *Hobby Lobby*, 547 U.S. at 728 and *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 815 (2000); *see also Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (citation omitted).

Here, Defendant had no less restrictive means to further the above identified compelling state interests.  He could not prevent Plaintiff from participating in the family visiting program so long as California Code of Regulations, Title 15, § 3177(b)(1) remained in effect.  Defendant therefore did not have other less restrictive methods available to him at the time relevant here.

Defendant has not unduly infringed on Plaintiff's religious rights under RLUIPA.  Congress expected federal courts to apply RLUIPA's exacting standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'"  *Cutter*, U.S. 544 at 723 (quoting 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA)).  The enforced regulations, built on correctional experience, expertise, and rationale, furthered compelling interests in ensuring institutional safety in the least restrictive means available.  The Court should therefore grant summary judgment for Defendant on Plaintiff's RLUPIA claim.

14

**III.   DEFENDANT'S REFUSAL TO LOWER PLAINTIFF'S CUSTODY RESTRICTIONS DID NOT CONSTITUTE A VIOLATION OF PLAINTIFF'S RIGHT TO DUE PROCESS.**

Defendant's refusal to lower Plaintiff's Custody Restrictions did not constitute a violation of Plaintiff's Right to Due Process under the Fourteenth Amendment.  The Fourteenth Amendment's Due Process Clause states that no state may deprive any person of life, liberty, or property, without due process.  Prisoners only have a Fourteenth Amendment right to procedural due process before the imposition of restrictions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Inmates additionally do not have a protected liberty interest in their custodial classifications.  *See Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Espinoza v. Benoit*, 108 F. App'x 869, 871 (5th Cir. 2004) (finding that close custody confinement "does not constitute an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.'") (*quoting Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)).

Plaintiff fails to show that Defendant's denial of his request that his custody restrictions be lowered caused "atypical and significant hardship" in relation to the "ordinary incidents of prison life."  He does not indicate how he was subjected to such hardship.  While he claims that Defendant's failure to lower his custody restrictions, by way of removing his VIO administrative determinant and lowering his classification score, would allow him to access different programming and institutions while in prison, he does not sufficiently show that Defendant's conduct caused him hardship not typical of prison life, which is frequently dictated by limitations related to classification.  (Deposition of Plaintiff at 49.)

Additionally, Plaintiff does not have a protected liberty interest in his custodial classification and, therefore, his due process rights are not implicated by Defendant's declining to lower his custody restrictions.  *Wilson*, 976 F.2d at 958; *Espinoza*, 108 F. App'x at 871; *Grimes v. Dir., Tex. Dep't of Crim. Just.-Corr. Insts. Div.*, U.S. Dist. LEXIS 237150 (E.D. Texas 2023).

Furthermore, Defendant's denial of Plaintiff's request that his custody restrictions be lowered was pursuant to state regulations.  California Code of Regulations, Title 15, § 3375.2(b)(28(J) only permitted the removal of Plaintiff's "VIO" administrative determinant

15

during an annual review, and Plaintiff's January 9, 2024 hearing that is the basis of this lawsuit was a Post-Board Unit Classification Hearing, not an annual review. (Vazirani Decl. Ex. B.) In addition, the same regulation prohibits inmates with a history of sex crimes from being housed in Level I facilities, which have a lower level of security, and consequently fewer custodial restrictions on inmates, but are only to house incarcerated individuals with placement scores of 0 to 18. Cal. Code Regs. Tit. 15 § 3375.2(a)(2); Vazirani Decl. Ex. I). Plaintiff's placement score therefore could not be lowered below 19, as indicated by CDCR policy and confirmed by Plaintiff. (Deposition of Plaintiff at 47; Vazirani Decl. Ex. I.) Accordingly, Defendant's decision to deny Plaintiff's request to have his custody restrictions lowered was supported by state regulations, did not implicate Plaintiff's right to due process, and did not cause atypical and significant hardship to Plaintiff given ordinary prison life. Under these facts, Defendant is entitled to summary judgment on Plaintiff's due process claim.

## IV.    DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.

In this case, qualified immunity shields Defendant from liability for violating Plaintiff's rights. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity exists to shield an officer from liability for 'mere mistakes in judgment, whether the mistake is one of fact or one of law.'" *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)).

In determining whether an officer is entitled to qualified immunity, courts consider whether (1) there has been a violation of a constitutional right and (2) that right was clearly established at the time of the officer's alleged misconduct. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). No case directly on point is necessary; only existing precedent must have

16

placed the statutory or constitutional question beyond debate. *Id.* (citations omitted). For this inquiry, only binding precedent is relevant. *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (citing *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004)).

Under the first prong of the analysis, Defendant is entitled to qualified immunity because no connotational violation occurred. As demonstrated, Defendant did not violate Plaintiff's rights under the First Amendment, RLUIPA, or the Fourteenth Amendment. Moreover, the second prong is also satisfied, under which Plaintiff bears the burden of proving the law was clearly established. Here, the issues presented are: 1) whether it has been clearly established that prisoners convicted of a sex offense have the right to participate in family visiting even through state regulations explicitly prohibit their participation, and 2) whether prisoners convicted of a sex offense are eligible for their "VIO" administrative determinants to be removed and their placement scores to be lowered at Post-Board Unit Classification Committee Hearings, even though state regulations and CDCR policy state otherwise. Defendant is not aware of precedent supporting these assertions. Thus, reasonable prison staff would not have been aware that Defendant's conduct constituted a constitutional violation. Defendant is therefore entitled to qualified immunity.

## CONCLUSION

Defendant is entitled to summary judgment on Plaintiff's First Amendment, RLUIPA, and Fourteenth Amendment claims. Defendant did not violate Plaintiff's right to freely exercise his religion because his decision to deny Plaintiff's request to participate in family visiting was pursuant to state regulations and Plaintiff cannot prove that the relevant regulations are invalid. Additionally, Defendant's conduct did not substantially burden Plaintiff's right to freely exercise his religion and was rationally related to a legitimate penological purpose. Defendant also did not violate Plaintiff's rights under RLUIPA because he did not substantially burden Plaintiff's religious exercise, and he acted in furtherance of a compelling government interest by the least restrictive means. Furthermore, Defendant did not violate Plaintiff's rights under the Fourteenth Amendment as Plaintiff fails to provide evidence to show that the denial of his request that his custody restrictions be lowered caused significant hardship in relation to the ordinary incidents of

17

prison life.  Finally, Defendant is entitled to qualified immunity on all claims.  For these reasons, the Court should grant summary judgement in Defendant's favor.

Dated:  September 8, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
KYLE A. LEWIS
Supervising Deputy Attorney General


*/s/ Isha Vazirani*
ISHA VAZIRANI
Deputy Attorney General
*Attorneys for Defendant S. Tumacder*

SF2025400340
44789904.docx

Def.'s Memorandum of Ps and As Supp. Mot. Summ. J.  (3:24-cv-06675-RFL)