Eric L. Gonzalez-E66196
P.O. Box 689   XW222 Low
CTF-Central Yard
Soledad, CA 93960-0689

FILED

OCT 02 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GONZALEZ,

        Plaintiff,

        v.

TUMACDER, et al.,

        Defendants.

_____ /

Case No. 3:24-cv-06675-RFL

PLAINTIFF'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT

Judge: The Honorable Rita F. Lin
Trial Date: Not Set
Action Filed: September 24, 2024

TABLE OF CONTENTS

Page

Introduction.................................................................1

Statement of Facts..........................................................2

Legal Standard..............................................................4

Argument....................................................................5

    I.   TUMACDER VIOLATED GONZALEZ'S FREE EXERCISE RIGHTS
        BY PLACING SUBSTANTIAL BURDEN ON HIS RELIGIOUS
        PRACTICE, WHICH WAS NOT RATIONALLY RELATED TO A
        LEGITIMATE PENOLOGICAL INTEREST.............................6

        A.  Tumacder's Use of Blanket Policy to Deny Gonzalez
            Participation in the Family Visiting Substantially
            Burden His Practice of His Religious Beliefs..............6

        B.  Turner's First Prong-Regulation Not Rationally
            Related to Legitimate Penological Interest................8

        C.  Turner's Third Factor Favors Gonzalez....................14

        D.  Turner's Fourth Factor Favors Gonzalez Because
            Clear, Ready Alternatives Already Exist to Ac-
            commodate Gonzalez's Religious Exercise..................15

   II.  TUMACDER IS LIABLE ON GONZALEZ'S RLUIPA CLAIM
        BECAUSE HIS CONDUCT DID SUBSTANTIALLY BURDEN
        GONZALEZ'S RELIGIOUS EXERCISE AND TUMACDER DID
        NOT FURTHER A COMPELLING STATE INTEREST IN THE
        LEAST RESTRICTIVE MEANS....................................16

        A.  Tumacder Did Substantially Burden Gonzalez's
            Religious Exercise.......................................17

        B.  Tumacder Has Not Demonstrated That Blanket Policy
            is Least Restrictive Means...............................18

 III. TUMACDER'S REFUSAL TO CONSIDER AND ALLOW GONZALEZ
        TO PRESENT DOCUMENTED EVIDENCE FOR VIO DETERMINATE
        REMOVAL VIOLATED HIS RIGHT TO DUE PROCESS..................21

   IV.  TUMACDER IS NOT ENTITLED TO QUALIFIED IMMUNITY................23

CONCLUSION.................................................................25

TABLE OF AUTHORITIES

Page

Cases

Anderson v. Liberty Lobby, Inc.
477 U.S. 242(1986)............................................4

Andrews v. Martinez
829 Fed.Appx.*814 (Nov.20, 2020).....................24-25

Ashcroft v. al-Kidd
563 U.S. 731(2011.......................................24

Ashker v. Cal.Dep't. of Corr.
350 F.3d 917 (9th Cir.2002)..........................13

Ballentine v. Tucker
374 F.3d 773 (9th Cir.2022)..........................24

Brosseau v. Haugen
543 U.S. 194 (2004).......................................4

Callahan v. Woods
658 F.2d 679 (9th Cir.1981).............................7

Crime Justice & Am., Inc. v. Honea
876 F.4th 966 (9th Cir.2017).......................13-14

Farmer v. Brennan
511 U.S. 825 (1994)....................................23

Graham v. Florida
560 U.S. 48 (2010)....................................12

Green v. Solano Cnty.Jail
513 F.3d 982 (9th Cir.2008)............................6

Hearns v. Terhune
413 F.3d 1036(9th Cir.2005)...........................23

Hobbie v. Unemployment Comm'n
480 U.S. 136 (19870....................................7

Holt v. Hobbs
574 U.S. 352 (2015)................................18-21

Jones v. Slade
23 F.4th 1124 (9th Cir.2022)......................passim

Keenan v. Hall
83 F.3d 1083 (9th Cir.1996)...........................22

TABLE OF AUTHORITIES
(continued)

Page

Cases

Kennedy v. Louisianna
   554 U.S. 407 (2008)..........................................12

Lal v. California
   746 F.3d 1112 (9th Cir.2004)................................23

Malik v. Brown
   16 F.3d 330 (9th Cir.1995)..................................23

Mauro v. Arpaio
   188 F.3d 1054 (9th Cir.1999)................................12

Nealy v. Shinn
   2024 U.S. App. LEXIS 20756.................................6-7

People v. Contreras
   4 Cal.5th 349 (2018)......................................11-12

Ramirez v. Galaza
   334 F.3d 850 (9th Cir.2003).................................22

Swarthout v. Cooke
   562 U.S. 216 (2011).......................................21-25

Turner v. Safley
   482 U.S. 78 (1987)......................................passim

Walker v. Beard
   789 F.3d 1125 (9th Cir.2015)................................18

Whitford v. Salmonsen
   2025 U.S. App. LEXIS 17857................................8,18

Zetwick v. Cnty. of Yolo
   850 F.3d 436 (9th Cir.2017)................................4-5

Statutes

United States Code, Title 42
 - § 2000cc-1(a)...............................................17

Religious Land Use and Institutionalized Person
Act (RLUIPA)............................................passim

California Penal Code
   § 207(a)...................................................1
   § 261.....................................................1
   § 290.....................................................1

   § 1170(a)(1)-(2).........................................9-10

iii

TABLE OF AUTHORITIES
(continued)

Page

Statutes

California Code of Regulations, Title 15
§ 3770(a)..................................................9
§ 3177(b)(1)..........................................passim
§ 3177(b)(2)...............................................16
§ 3177(b)(2)(A)-(H)....................................20-21
§ 3315(a)(5)(H)............................................20
§ 3377.1(B)(10)............................................1
§ 3375(b)................................................16
§ 3375.2(b)(28)............................................1

Constitutional Provisions

United States Constitution
First Amendment(Free Exercise Clause)....................passim
Fourteenth Amendment(Due Process Clause)................passim

## INTRODUCTION

Plaintiff Eric Gonzalez("Gonzalez") is an incarcerated person in the custody of the Department of Corrections and Rehabilitation ("CDCR") proceeding in this action pro se. Gonzalez alleges that on January 9, 2024 at CTF--Soledad Unit Captain Sean Tumacder("Tumacder") denied his request to participate in the Family Visiting Program. Gonzalez alleges that this denial prevented him from practicing his Christian religion of privately worshipping with family members and others who would be allowed to participate in the Family Visiting Program. Gonzalez also alleges that on the same day, Tumacder denied his request to lower his custody restrictions, even though the parole board("Board") had recommended that they be lowered. He also denied Gonzalez the opportunity to present evidence in support of his request.

Tumacder is not entitled to summary judgment on all claims. Tumacder's decision to apply the blanket policy to deny Gonzalez's request to participate in the Family Visiting Program placed a substantial burden on his religious exercise in violation of the Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act("RLUIPA"). Moreover, because Gonzalez does have a liberty interest in a Post-Board Unit Classification Committee hearing, Tumacder's decision to appy the blanket policy to deny Gonzalez the opportunity to present evidence to contest the custody restrictions violated the Due Process Clause. Finally, Tumacder is not entitled to qualified immunity.

Accordingly, Gonzalez respectfully requests that the motion for summary judgment be denied on all claims and that this case proceeds to trial.

1

## STATEMENT OF FACTS

Gonzalez is an incarcerated person serving a life sentence with the possibility of parole under the Three Strikes law for Attempted Kidnap in violation of Penal Code §207(a). (Declaration of Eric Gonzalez("Gonzalez Decl.") Exh.A)[1] Gonzalez previously served a term in state prison pursuant to four convictions of rape in violation of Penal Code §261. (Gonzalez Decl. Exh.B at p.4) Gonzalez is required to register as a sex offender pursuant to Penal Code §290.

On January 9, 2024, Gonzalez was given a Post-Board Unit Classification hearing conducted by Tumacder. (Gonzalez Decl. at ¶ 2) The purpose of the Post-Board Unit Classification hearing is to go over any recommendations made by the hearing panel(Board Panel). (Gonzalez Decl. Exh.C at p.2) The Board Panel's recommendations may include relevant programming of the inmate, id., or "work to reduce custody level" of the inmate. (Gonzalez Decl. Exh.D at p.1) The Post-Board Unit Classification Committee, in this case Tumacder, is required to review these recommendations with Gonzalez and help him understand what actions to take to meet the Board's recommendations. (Gonzalez Decl. Exh.C at p.2)

During the January 9, 2024 hearing, Gonzalez requested to participate in the Family Visiting Program to worship with his family

---

[1] All exhibits that are referenced in this document are attached to the Declaration of Eric Gonzalez in Support of Opposition to Motion for Summary Judgment("Gonzalez Decl.").

///
///
///

2

and others who would be allowed to participate in the Family Visiting (Gonzalez Decl. ¶ 3 ), in which Tumacder denied Gonzalez's request based on the CDCR's blanket policy that prohibits all sex offenders from participating in Family Visiting Program. (Gonzalez Dec Decl. at ¶ 3 ) On the same day, Gonzalez requested consideration of custody reduction--Violent("VIO") removal consideration--which the Board Panel had recommended he seek. (Gonzalez Decl. at ¶ 8 ) Tumacder denied Gonzalez's custody reduction request without ever allowing Gonzalez to present his documents that he believed refuted the blanket policy that prohibits all sex offenders from custody reduction consideration. (Gonzalez Decl. at ¶ 8 )

Prior to the blanket policy of title 15 §3377.1(b)(10)'s prohibiting all sex offenders from being housed in a Level 1 facility, Gonzalez was previously housed at a Level 1 facility for several years. (Gonzalez Decl. at ¶ 9 ; see also Gonzalez Decl. Exh.E at pp.1-3, showing housing at CCI Level 1)[2]  Prior to the blanket policy of title 15 §3375.2(b)(28)'s  VIO determinate enactment, CDCR did not place a VIO determinate on Gonzalez even though he had an "R" Suffix for being a sex offender housed at a Level 1. (Gonzalez Decl. at ¶ 9 ; see also Gonzalez Decl. Exh.E at pp.1-3) Moreover, prior to CDCR's enactment of title 15 §3177(b)(1)'s prohibiting all sex offenders from participating in the Family Visiting Program, CDCR had approved Gonzalez for Family Visiting Program participation. (Gonza-

_____

[2] Unless indicated, all references to CDCR's regulations come from title 15 of the California Code of Regulations.

///

3

lez Decl. Exh.F at p.1) Currently, the Board of Parole Hearings' Forensic Pschologist(Dr.Marsic) evaluated Gonzalez as a "Low" risk for violence and that "Low risk examinees are expected to commit violence much less frequently than all other persons under supervision."(Gonzalez Decl. Exh.G at p.3)

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.(Zetwick v. Cnty. of Yolo, 850 F.3d 436, 440(9th Cir.2017). "This statement does not fully explain the role of the courts at summary judgment, however."(Id.) As to that, our Supreme Court has reiterated, "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." (Id. at 441(citing Brosseau v. Haugen(2004) 543 U.S. 194, 195(per curiam). "This...is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"(Anderson v. Liberty Lobby, Inc.(1986) 477 U.S. 242, 249). It is also clear that the court must not make crediblity determinations.(Id. at 255) "Similarly, the district court must recognize that, where evidence is genuinely disputed on a particular issue--such as by conflicting testimony--that 'issue is inappropriate for resolution on summary judgment."(Zetwick, 850 F.3d at 441) "To put another way, 'where the district court has made a factual determination, summary judgment cannot be appropriate.'"(Id.) "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in

4

the respondent's favor.'" (*Zetwick*, 850 F.3d at 441) The district court must not only consider the record on summary judgment, but must consider that record in light of the "governing law." (*Id.*)

## ARGUMENT

Tumacder is not entitled to summary judgment because Gonzalez's evidence shows that there are genuine issues in dispute that Tumacder did violate Gonzalez rights under the Free Exercise Clause, RLUIPA, and the Due Process Clause. Specifically, summary judgment should not be granted because Gonzalez's evidence shows there is a genuine dispute that his religious exercise to worship privately with family and others in family visiting was substantially burdened by Tumacder's prohibiting Gonzalez from participating in the Family Visiting Program, and that such denial was not rationally related to a legitamate state interest. Moreover, summary judgment should not be granted on Gonzalez's RLUIPA claim because his evidence shows that there is a genuine dispute that Tumacder's denying Gonzalez to participate in the Family Visiting Program constitutes a substantial burden on his religious practice of worshipping privately with his family members and others, and that such denial by Tumacder did not further a legitimate state interest. Additionally, summary judgment should not be granted on Gonzalez's due process claim because his evidence shows that there is a genuine dispute that Gonzalez does have a liberty interest in a Post-Board Unit Classification Committee hearing, and that Tumacder denied Gonzalez the opportunity to be heard in a meaningful manner. Finally, Tumacder is not entitled to to qualified immunity. Accordingly, Tumacder's motion for summary judgment should be denied.

5

I.   TUMACDER VIOLATED GONZALEZ'S FREE EXERCISE RIGHTS BY PLACING SUSTANTIAL BURDEN ON HIS RELIGIOUS PRACTICE, WHICH WAS NOT RATIONALLY RELATED TO A LEGITIMATE PENOLOGICAL INTEREST.

The Free Exercise Clause of the First Amendment, made applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...."(U.S. Const. amend I). The right to free exercise is to be "jealously guarded."(Jones v. Slades, 23 F.4th 1124, 1144(9th Cir.2022). To merit protection under the Free Exercise Clause in the prison context, a claimant must be "sincerely held" and religious in nature.(Id.) Once a claimant demonstrates that the challenged regulation impinges on his sincerely held religious exercise, the burden shifts to the government to show that the regulation is "reasonably related to legitimate penological interest."(Id.)  The Ninth Circuit uses the Turner factors to evaluate whether a prison regulation implicating an inmate's free exercise right is valid.(Id.)

A. Tumacder's Use of Blanket Policy to Deny Gonzalez Participation in Family Visiting Substantially Burdened His Practice of His Religious Beliefs.[3]

To assess whether Tumacder's use of title 15 §3177(b)(1)'s blanket policy to deny Gonzalez participation in the Family Visiting Program was a substantial burden on his religious exercise, this Court  must first identify the religious exercise at issue.Nealy v.

---

[3] Tumacder does not contest Gonzalez's sincerity of his religious beliefs or its religious nature.

v. _Shinn_, 2024 U.S. App. LEXIS 20756 *3 (Aug.16, 2024).

Tumacder mischaracterizes Gonzalez's religious exercise as him wanting to practice his Christian faith in general, and that he has been practicing his Christian faith for the last "28 years" without participating in the Family Visiting program.(Defendant's Mot.Summ. J., at 8) First, Gonzalez's testimony at the deposition--that he has been practicing Christianity for "28 years"--was in response to Tumacder's counsel having asked Gonzalez about some of the major tenents of his faith, not as to the free exercise claim at issue. (Gonzalez Decl. Exh.B at p.6) When asked about "mandatory" Christian practice, Gonzalez testified that "private worship with other believers" is required.(**Id.**) Gonzalez's family members are believers, and his fiancee(Deanna Palmer) is a believer.(Gonzalez Decl. at ¶ 5) Thus, the religious exercise issue here is Gonzalez's right to "private worship with family members and others in the Family Visiting Program," as stated in the Complaint.(Complaint, at p.3).

Second, because "[t]he Supreme Court has explained that the timing of the adoption of a religious belief is 'immaterial' to the determination of whether a person's religious exercise has been burdened[,]" _Hobbie_ v. _Unemployment Comm'n_(1987) 480 U.S. 136, 144, Gonzalez not having practiced prayer privately with family and other believers in the last 28 years is "immaterial" to the determination of whether Gonzalez's religious exercise has been substantially burdened.(_Callahan_ v. _Woods_, 658 F.2d 679, 687(9th Cir.1981)("So long as one's faith is religiously based at the time it is asserted, it should not matter...whether that faith derived from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible.") Thus, Tumacder's assertion that Gonza-

lez had not practiced private prayer with family in the family visiting in the last 28 years is "immaterial" to the determination of whether Gonzalez's religious exercise has been substantially burdened. (Jones v. Slade, 23 F.4th at p.1143 ("Jones does not forfeit his claim because he may have previously failed to adhere to the practice of reading the texts during Ramadan.")

Finally, the Ninth Circuit has held that it has "little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise."(Green v. Solano Cnty. Jail, 513 F.3d 982, 988(9th Cir.2008). Here, Tumacder's application of title 15 §3177(b)(1) makes Gonzalez ineligible for particpation in family visiting, which outright bans Gonzalez from privately praying with family and other believers. Because title 15 §3177(b)(1)'s ineligible mandate is an outright ban that prevents Gonzalez's religious exercise, Tumacder's use of the regulation against Gonzalez constitutes a "substantial burden" on his religious exercise.(Whitford v. Salmonsen, 2025 U.S. App. LEXIS 17857 *3 (July 18, 2025("The Clear Conduct Policy completely bars Whitford from being eligible to be choosen as a sweat lodge set-up crew member for a six-month period, so Whitford makes a prima facie showing of substantial burden.").

B. Turner's First Prong-Regulation not Rationally Related to Legitimate Penological Interest.

Turner v. Safley(1987) 482 U.S. 78 requires the Court to consider four factors in determining whether title 15 §3177(b)(1) is reasonably related to legitimate penological interests.(Id. at 89-91) Those four factors are: (1)there must be a valid, rational connection between the prison regulation and the legitimate government in-

terest put forth to justify it, (2)whether there are alternative means of exercising the right left open to inmates, (3)the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally, and (4)ready alternatives to the policy which would indicate that the policy may be an "exaggerated response" to prison concerns.(Turner, 482 U.S. at 89-90)

To evaluate whether a valid, rational connection exists under Turner's first prong, the Court must determine whether the governmental objective underlying the policy is (1)legitimate, (2)neutral, and (3)whether the policy is rationally related to that objective. (Jones, 23 F.4th at 1135).

Here, the evidence shows that title 15 §3177(b)(1) is not rationally related to Tumacder's assertion of security, in light of Penal Code §1170(a)(1)-(2)'s rehabilitative objectives in inmate programming. Specifically, the California Legislature finds and declares that the purpose of incarceration is rehabilitation and successful community reintergration achieved through education, treatment, and active participation in rehabilitative and restorative justice programs.(Penal Code §1170(a)(1)). The Legislature has stated that "all" inmates have access to rehabilitative programs. (Id. at §1170(a)(2)). Visiting in California prisons are used as a means of "preparing inmates for successful release and rehabilitation."(Title 15 §3170(a)). If the Legislature would have thought that all sex offenders were a security threat to the Family Visiting Program, then it would have excluded all sex offenders from participating in the Family Visiting program under Penal Code §1170 (a)(1)-(2)'s provisions. Put simply, a jury could infer from the

9

Legislature not having excluded all sex offenders from any rehabilitative programs under Penal Code 1170(a)(1)-(2), that all sex offenders do not pose a security threat.

Moreover, prior to the exclusion of all sex offenders under title 15 §3177(b)(1), CDCR officials routinely authorized sex offenders to participate in the Family Visiting program.(Gonzalez Decl. at ¶ 10; see also Gonzalez Decl. Exh.F at p.1, showing CDCR approved Gonzalez for Family Visiting Program prior to blamket policy ban.)[4] CDCR officials having previously allowed family visiting for sex offenders on a routine basis prior to the regulation ban is evidence that a reasonable jury could infer that the blanket policy ban of title 15 §3177(b)(1) is an exaggerated response to prison security. (Turner, 482 U.S. at 98-99 (holding proffered justification did not explain the adoption of a rule banning marriage among inmates when prison officials previously allowed inmate marriages routinely.)

Furthermore, Turner's first prong requires that CDCR's regulation be applied in a "neutral" fashion.(Jones, 23 F.4th at 1136) When there is evidence that an otherwise legitimate policy is being applied in a discriminatory manner, courts inquire whether the unequal

---

[4] Tumacder inferring that Gonzalez was not previously approved for family visiting because he had not signed the CDC 128-B chrono is misplaced. Indeed, the CDC 128-B was reflective of staff review that required the "date, notation that file was reviewed pursuant to AB 94-10, Inmate eligible/not eligible for family visits and file reviewed.(Gonzalez Decl. Exh.F at p.1) Thus, Gonzalez's signature was not required for family visiting approval.

///

application of the policy defects the national relationship between the policy and the government's asserted justification. (Jones, 23 F.4th at 1137) Evidence of inconsistent application of a regulation may be proof that the policy is not neutral and may preclude summary judgment on an as-applied challenge. (Id.)

Here, CDCR officials are applying their family visiting security concerns under title 15 §3177(b)(1) inconsistently among inmates convicted of murder and sex offenders. Specifically, title 15 §3177 (b)(1) does not bar inmates convicted of multiple murders and who are sentenced to life without the possibility of parole ("LWOP"), unless their victims are family members or minors. (Id.) In contrast, title 15 §3177(b)(1) prohibits all sex offenders from family visiting even if their victims are not family members or minors. (Id.) In other words, title 15 §3177(b)(1) authorizes family visiting for LWOP inmates who are classified at a higher security level than sex offenders, while denying family visiting to all sex offenders who are classified at a lower security level than LWOP inmates. It cannot be disputed that the crime of "murder" is punished more harshly than rape. (See e.g., People v. Contreras (2018) 4 Cal.5th 349, 382 ["...defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murder....Although an offense like robbery or rape is a serious crime deserving serious punishment, those crimes differ from homicide in a moral sense....there is a distinction between intentional 1st-degree murder on the one hand and nonhomicide crimes against individual persons, even including child rape, on the other. The latter crimes may be devastating in their harm,..., but in terms of moral depravity and of the injury to

11

the person and to the public, they cannot be compared to murder in their severity and irrevocability.") citing <u>Graham</u> v. <u>Florida</u>(2010) 560 U.S. 48, 69 and <u>Kennedy</u> v. <u>Louisianna</u>(2008) 554 U.S. 407, 438). Indeed, life without parole is "the second most severe penalty permitted by law" in California.(<u>Contreras</u>, 4 Cal.5th at 371) Even though LWOP inmates have committed the most egregious crimes of murder and are allowed to participate in family visiting, sex offender inmates whose crimes did not result in death are banned from family visiting. In sum, a reasonable jury could infer that because CDCR officials authorize family visiting to the most dangerous security level of LWOP inmates, that title 15 §3177(b)(1)'s ban on all sex offenders-who are of lower security level than LWOP inmates- is inconsistently applied and not rationally related to a legitimate penological interest.

Ultimately, the Court must determine whether prison officials judgment was "<u>rational</u>"(<u>Mauro</u> v. <u>Arpaio</u>, 188 F.3d 1054,1060 (9th Cir.1999), that is, whether prison officials might reasonably have thought that the blanket policy ban of <u>all</u> sex offenders would advance its security concerns in family visiting. The blanket policy ban of <u>all</u> sex offenders from family visiting for security purposes is irrational because there are sex offenders who have received a "Low risk" for violence on their Comprehensive Risk Assessment ("CRA") from the Board of Parole Hearing ("BPH")'s Forensic Psychologist. "Low risk examinees are expected to commit violence much less frequently than <u>all other persons under supervision</u>."(Gonzalez Decl. Exh. G at p.3 ) Gonzalez received a low risk on his CRA.(<u>Id.</u>) Since Low risk sex offender examinees are expected to commit violence much less frequently than <u>all other persons under supervision</u>,

then it is "irrational" for prison officials to have reasonably thought Low risk sex offender examinees would be more of a security concern than inmate murderers who have not received a Low risk on their CRA. Thus, a reasonable jury could infer from a sex offender's Low risk finding on his CRA, who is expected to commit violence much less frequently than all other persons under supervision, that prison officials blanket policy ban of sex offenders from family visiting under title 15 §3177(b)(1) was "irrational and not related to legitimate security issues.

Going back briefly to the issue of "neutrality" that Turner requires, Jones, 23 F.4th at 1136, prison officials inconsistent application of its family visiting security concerns under title §3177(b)(1) is clearly shown by prison officials authorizing family visiting to inmates who are classified as Security Threat Groups. For example, Security Threat Group 1("STG-1") inmates affect the "safety and security" of the prison and public safety with certified threat levels of violence, see Gonzalez Decl. Exh.H at p.7, yet prison officials do not use title 15 §3177(b)(1)'s security concerns to prohibit STG-1 inmates from participating in family visiting. Moreover, title 15 §3177(b)(1) does not prohibit other STG inmates from family visiting. In short, a reasonable jury could infer that because prison officials authorize family visiting for STG inmates who are a verified threat to the prison/public, that CDCR's blanket ban of all sex offenders from family visiting is applied "inconsistently" under Turner's "neutral" test.(Jones, 23 F.4th at 1137[ Evidence of inconsistent application of a regulation may be proof that the policy is not neutral precluding summary judgment]).

13

C. Turner's Third Factor Favors Gonzalez.

Turner's third factor requires Gonzalez to show the impact, if any, that accommodation of his private worship with family and other approved visitors will have on guards and other inmates, and on the allocation of prison resources generally. (Turner, 482 U.S. at 89-90)

Here, Tumacder reiterates that Gonzalez's participation in family visiting would jeopardize institutional safety. (Def.'s Mot.Summ. J., at p.11) It appears that Tumacder is refering to the language in title 15 §3177(b)(1)(D) that he had previously cited. (Def.s' Mot. Summ.J., at p.9) But, nowhere in Tumacder's motion or declarations does he "specify" what "conduct" a sex offender would, or could, do to disrupt or jeopardize the security and operation of the prison. Nor does Tumacder "specify" any "conduct" of a sex offender that would, or could, jeopardize the safety of others, which constitutes mere speculation by prison officials. (Honea, 876 F.3d at 977 ("We do 'not accord defendants deference on the basis of mere speculation.")

Gonzalez's participation in family visiting would not negatively affect guards or other inmates because: (1) Gonzalez maintains good relationships with both staff and other inmates (Gonzalez Decl. Exh.I at pp.1-6), (2) Gonzalez has a "Low risk" for violence, id. Exh.G at p. 3, (3) Gonzalez is in the "maintenance" stage of change, id. at p.1, para.2, (4) Gonzalez has not acted in violence his entire prison term of 28 years, id., (5) Gonzalez has "learned to manage his negative emotions and impulses," id. at p.2, para.4, and (6) Gonzalez has successfully completed numerous self-help programs that addressed his offending. (Id. at p.1, para.1-2)

Moreover, the family visiting where Gonzalez is housed is within the secured perimeter that is directly under a "gun tower,"

14

which is well within Gonzalez's custody Level II.(Gonzalez Decl. at ¶ 11)

Furthermore, the allocation of prison resources would not change if Gonzalez were allowed to participate in the Family Visiting Program because **all** inmates are required to purchase all food for the family visit through the institution family visiting coordinator. (Gonzalez Decl. Exh.H  at p. 4 ) Additionally, prison officials would not have to hire any additional staff if sex offenders were allowed to participate in family visiting because only a set number of inmates are allowed in family visiting at a time.(Gonzalez Decl. ¶ 12) Also, prison officials would not have to provide additional security because family visiting is located right under a "gun tower."(_Id_. at ¶ 11) Again, before the enactment of the blanket policy ban of sex offenders under title 15 §3177(b)(1), prison officials did not have to allocate any additional funds to accommodate sex offenders participation in family visiting. In short, allowing sex offenders to participate in family visiting would not disrupt the Family Visiting Programs "status quo." Accordingly, **Turner's** third factor favors Gonzalez.

   D. Turner's Fourth Factor Favors Gonzalez Because Clear, Ready Alternatives Already Exist to Accommodate Gonzalez's Religious Exercise.

The existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.(**Turner**, 482 U.S. at 90) If an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not

15

satisfy the reasonable relationship standard. (Turner, 482 U.S. at 90)

Here, CDCR already has in place a categorical screening regulation under title 15 §3177(b)(2) to determine whether non sex offender inmates are deemed a security threat to family visiting. Gonzalez Decl. Exh. H at p.4) All prison officials would have to do is to simply apply title 15 §3177(b)(2)'s categorical list to sex offenders, as it does to all other inmates applying to family visiting. Indeed, "every inmate" within CDCR is already required to have an annual classification hearing to address any security concerns under title 15 §3375(b). (Gonzalez Decl. Exh. H at p.5) Thus, any security concerns about Gonzalez's participation in family visiting could easily be addressed in his annual classification hearing to determine whether he qualifies under title 15 §3177(b)(2)'s security categories. If Gonzalez were to pass title 15 §3177(b)(2)'s security categories, then he should be allowed to pray privately with family and others approved in family visiting. Accordngly, a reasonable jury could infer that because CDCR already has in place an annual classification process to screen sex offenders for institutional security, and because title 15 §3177(b)(2)'s categorical security process already exist to screen inmates for family visiting, that the blanket policy ban of all sex offenders under title 15 §3177(b)(1) was an "exaggerated response" to prison concerns.

## II. TUMACDER IS LIABLE ON GONZALEZ'S RLUIPA CLAIM BECAUSE HIS CONDUCT DID SUBSTANTIALLY BURDEN GONZALEZ'S RELIGIOUS EXERCISE AND TUMACDER DID NOT FURTHER A COMPELLING STATE INTEREST IN THE LEAST RESTRICTIVE MEANS.

Tumacder is liable on Gonzalez's RLUIPA claim because he did substantially burden Gonzalez's religious exercise and Tumacder did

16

not further a compelling state interest in the least restrictive means. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government can demonstrate that the burden "is in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest."(Jones, 23 F.4th at 1139[citing 42 U.S.C. §2000cc-1(a)). RLUIPA is more generous to the religiously observant than the Free Exercise Clause.(Jones, 23 F.4th at 1139) RLUIPA covers state prisons.(Id. at 1140) RLUIPA reflects a congressional effort to accord "heightened" protection to religious exercise.(Id.) "As such, RLUIPA is to be 'construed broadly in favor of protecting an inmate's right to exercise his religious beliefs.'" (Id.) Under RLUIPA, the plaintiff bears the initial burden of demonstrating that an institution's policy constitutes a substantial burden on his exercise of religion.(Id.) Once an inmate makes a prima facie showing, the burden shifts to the government to prove that the burden is the least restrictive means of furthernig a compelling governmental interest.(Id. at 1141)

A. Tumacder Did Substantially Burden Gonzalez's Religious Exercise.

In assessing a RLUIPA claim, courts must first identify the religious exercise at issue.(Id.) Here, as previously argued, ante at p.6, the religious exercise at issue is Gonzalez "privately" praying with family members and other believers. The only way Gonzalez can accomplish his private prayer with family and other believers is through CDCR's Family Visiting that provides "private time" with family and other approved visitors.(Gonzalez Decl. ¶ 13; see also

17

Decl. of M. Carillo in Support of Mot.Summ. J. at ¶ 5, showing the family visiting affords "private" time with family and other approved visitors.)

Tumacder's actions in applying title 15 §3177(b)(1) to Gonzalez substantially burdened his religious exercise because title 15 §3177(b)(1) makes Gonzalez ineligible to privately pray with family and others, or makes unavailable religious accommodation for his religious exercise.(Whitford, 2025 U.S. App. LEXIS 17857 *3 (July 8, 2025["The Clear Conduct Policy completely bars Whitford from being eligible to be chosen as a sweat lodge set-up crew member for a six-month period, so Whitford makes a prima facie showing of substantial burden."]) Accordingly, Tumacders actions substantially burdened Gonzalez religious exercise.

Gonzalez's private prayer with family and other believers is a "physical act intended to bring about communication with [his] diety."(Walker v. Beard, 789 F.3d 1125, 1134(9th Cir.2015)) Accordingly, Gonzalez's private prayer with family and other believers constitutes a religious exercise under RLUIPA, which has been substantially burdened by title 15 §3177(b)(1)'s blanket policy ban.

**B. Tumacder Has Not Demonstrated That Blanket Policy is Least Restrictive Means.**

RLUIPA's least restrictive means test contemplates a "more focused" inquiry and "requies the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'--the particular religious claimant whose sincere exercise of religion is being substantially burdened.'"(Holt v. Hobbs(2015) 574 U.S. 352, 363) RLUIPA requires a district court to scrutinize the asserted harm of granting specific

exemptions to particular religious claimants and to look to the marginal interest in enforcing the challenged government action in that particular context. (Holt, 574 U.S. at 363) In this case, that means the enforcement of CDCR's blanket policy ban under title 15 §3177(b)(1) that prevents Gonzalez's private worship with family and other believers. Moreover, RLUIPA does not permit such unquestioning deference. (Holt, at 364) RLUIPA makes clear that it is the obligation of the courts to consider whether exceptions are required under the test set forth by Congress. (Id.) That test requires CDCR not merely to explain why it denied the exemption but to prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest. (Id.)

Here, Tumacder hides behind "security" concerns to justify his actions, but RLUIPA requires more than prison officials to generically use security without stating "why" the religious exercise constitutes a security concern. (Id.) Nowhere in the motion or submitted declarations does Tumacder state what the actual security concern is that Gonzalez's religious exercise would jeopardize. Indeed, Tumacder does not allege that Gonzalez's religious exercise would help him escape, introduce contraband, or drain prison resources. Moreover, nor can Tumacder hide behind his assertion that he was only following state regulations, because the purpose of RLUIPA is to determine whether Gonzalez's religious exercise is to be "exempt" from such regulations. (Id. at 364 [RLUIPA "makes clear that it is the obligation of the courts to consider whether exceptions are required under the test set forth by Congress."])

Furthermore, Tumacder's motion and declarations in support of his motion does not even mention whether prison officials made any at-

19

tempts to explore other least restrictive means in this case. Indeed, to satisfy the "least-restrictive-means" test, Tumacder, again, hides behind the blanket policy ban of title 15 §3177(b)(1) (Def.'s Mot.Summ. J. at p.14), even though RLUIPA requires him "to **prove** that denying the exemption is the least restrictive means of further-ing a compelling governmental interest."(**Holt**, 574 U.S. at 364 (emphasis added)).

"[I]f a less restrictive means is available for the Government to achieve its goals, the Government **must** use it."(**Id**. at 365) Here, CDCR's family visiting security concerns require that the inmate must not be (A)designated Close Custody, (B)designated a condemned inmate, (C)assigned to a reception center, (D)assigned to an Administrative Segregation Unit, (E) assigned to a Security Housing Unit, (F) designated "C" status, (G) Guilty of one or more Division A or Division B offense(s) within the last 12 months, or (H) Guilty of distribution of a controlled substance while incarcerated in a state prison, under subsection 3315(f)(5)(H).(Gonzalez Decl. Exh.H at p.4) title 15 §3177(b)(2)(A)-(H).) Gonzalez passes each of family visiting security criteria in title 15 §3177(b)(2)(A)-(H), yet Tumacder did not apply this "least-restrictive-means" criteria to Gonzalez parti-cular circumstance.(Gonzalez Delc. ¶ 14) Moreover, because CDCR previously authorized Gonzalez to participate in family visiting (Gonzalez Decl. Exh.F at p.1), this Court may take that as evidence that CDCR officials security concerns in Gonzalez participating in family visiting is an "exaggerated response" to legitimate penolo-gical interest.(**Turner**, 482 U.S. at 98-99 (holding proffered justi-fication did not explain the adoption of a rule banning marriage among inmates when prison officials previously allowed inmate mar-

riages on a routine basis).) In short, Tumacder's failure to adhere to RLUIPA's "least-restrictive-means" test, by him not applying CDCR's security criteria under title 15 §3177(b)(2)(A)-(H) to Gonzalez's particular circumstances, shows Tumacder has not proved that he tried other readily available least restrictive means to further security without imposing a substantial burden on Gonzalez's religious exercise.(Holt, 574 U.S. at 364-65 ["The least-restrictive-means standard is exceptionally demanding," and it requires the government to "show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party."]) Accordingly, Gonzalez submits that the RLUIPA claim should proceed to trial and summary judgment denied.

### III. Tumacder's Refusal to Consider And Allow Gonzalez to Present Documented Evidence For VIO Determinate Removal Violated His Right to Due Process.

Preliminarily, Tumacder mischaracterizes Gonzalez's due process claim as being Tumacder's refusal to lower his custody restrictions. That is not Gonzalez's claim, rather Gonzalez's due process claim is Tumacder's refusal to consider and allow Gonzalez to present documented evidence showing that VIO determinate removal consideration was warranted because he was not a security threat.

The question before this Court is whether the state created a liberty interest in its "Post-Board Unit Classification Committee" hearing that warrants procedural due process. The U.S. Supreme Court has held that California state inmates are entitled to procedural due process at parole suitability hearings.(Swarthout v. Cooke(2011) 562 U.S. 216, 220) After a denial or grant of parole, within 15 calendar days of an inmate's parole hearing, the inmate

will appear before CDCR's "Post-Board Unit Classification Committee. (Gonzalez Decl. Exh.C at p.2)   The purpose of this meeting is to go over any recommendations made by the parole board panel.(Id.)   The Post-Board Unit Classification Committee reviews these recommendations with the inmate and helps them understand what actions to take to meet the Board's recommendations.(Id.)   Because the Post-Board Unit Classification Committee's purpose is to help Gonzalez "meet" the Board's recommendations to determine his "parole suitability," procedural due process must attach to the Post-Board Unit Classification Committee hearing in order to give Gonzalez a fair opportunity to present evidence that he completed the Board's recommendations to be found suitable for parole.

Moreover, there is no single standard of determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors requires case-by-case, fact-by-fact consideration.(Ramirez v. Galaza, 334 F.3d 850, 861(9th Cir.2003)). In determining whether a regulation's hardship is atypical and significant, courts look to whether there is a "likelihood" that the regulation will affect the duration of an inmate's sentence.(Keenan v. Hall, 83 F.3d 1083, 1089(9th Cir.1996))

Here, Tumacder's refusal to review Gonzalez's documents, that bore directly on the Board's recommendations that he lower his custody level, constitutes atypical and significant hardship because there is a "likelihood" Gonzalez will serve additional time in prison for not meeting the Board's lower custody level recommendation.

Furthermore, Tumacder's refusal to review Gonzalez's documents, that bore directly on the Board's lower custody recommendations, constitutes atypical and significant hardship because the custody

level determinant subjects Gonzalez to the "likelihood" of violence from other inmates. Indeed, Gonzalez was previously attacked by a cell-mate who had got a hold of Gonzalez's prison documents that showed his sex offender determinant, as stated by Dr.Hutchinson in January of 2009.(Gonzalez Decl. Exh.J at p.2) It cannot be disputed that prison officials have a duty to protect prisoners from violence at the hands of other prisoners.(Hearns v. Terhune, 413 F.3d 1036, 1040(9th Cir.2005) citing Farmer v. Brennan, 511 U.S. 825, 833) Thus CDCR's custody determinant as applied to Gonzalez, that subjects him to a "likelihood" of more violence from other inmates, constitutes atypical and significant hardship that warrants procedural due process that Tumacder did not provide Gonzalez. Accordingly, Gonzalez's due process claim should proceed to trial and the motion for summary judgment denied.

## IV. Tumacder is Not Entitled to Qualified Immunity.

Claims for injunctive relief are unaffected by qualified immunity.(Malik v. Brown, 16 F.3d 330, 335 fn.4) Here, Gonzalez filed suit against Tumacder in his official capacity for "injunctive relief" on all three claims in the Complaint, see Complaint at p.3, thus Tumacder is not entitled to qualified immunity concerning injunctive relief on all three claims.

Moreover, Tumacder is not entitled to qualified immunity for liability on Gonzalez's Free Exercise claim and Due Process claim. In determining whether an officer is entitled to qualified immunity, courts consider whether (1)there has been a violation of a constitutional right, and (2)that right was clearly established at the time of the officer's alleged misconduct.(Lal v. California, 746 F.3d 1112, 1116(9th Cir.2014)). A government officer's conduct violates

23

clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.(Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) No case directly on point is necessary; only exist precedent must have placed the statutory or constitutional question beyond debate. (Id.) For this inquiry, only binding precedent is relevant.(Ballentine v. Tucker, 374 F.3d 773, 781(9th Cir.2022))

As demonstrated, Tumacder did violate Gonzalez's rights under the Free Exercise Clause and the Due Process Clause, thus disqualifying Tumacder from being shielded by qualified immunity. Moreover, the second prong is also satisfied. Here, the issues presented are: 1) whether Tumacder may apply a regulation that substantially burden Gonzalez's free exercise right to private prayer with family and other believers if the regulation is not rationally related to any legitimate penological interest, and 2)whether Tumacder's refusal to allow Gonzalez to present document evidence during his Post-Board Unit Classification Committee hearing, that weighed on his parole suitability consideration, violated his opportunity to be heard.

Ninth Circuit precedent clearly establishes that at the time Tumacder violated Gonzalez's free exercise right, prison officials were prohibited from using regulations that substantially burden an inmate's religious free exercise rights if the regulations does not rationally relate to any legitimate penological interest.(Jones v. Slade, 23 F.4th at 1144-45)  Also, Ninth Circuit precedent clearly establishes that an inmate has a right to be heard concerning parole suitability hearings.(Andrews v. Martinez, 829 Fed.Appx.

*814 (Nov.20, 2020) citing <u>Swarthout</u> v. <u>Cooke</u>(2011) 562 U.S. 216, 220). Likewise, because it is clearly established that an inmate has a right to be heard at a parole suitability hearing, <u>id</u>., any reasonable prison staff would have been aware of an inmate's right to be heard at a Post-Board Unit Classification Committee hearing that is specifically designed to help the inmate understand what actions to take to meet the Board's recommendations for suitability for parole.(Gonzalez Decl. Exh.C at p.2) Tumacder is therefore not entitled to qualified immunity.

## CONCLUSION

Gonzalez's evidence shows that there is a genuine dispute about material facts that Tumacder violated Gonzalez's 1st Amendment rights, RLUIPA rights, and due process rights. And, the record shows that Tumacder is not entitled to qualified immunity. For these reasons, the Court should deny the motion for summary judgment.

Dated: September 22, 2025

Respectfully submitted,

Eric L.Gonzalez E66196
Pro se litigant

## PROOF OF SERVICE

## BY PERSON IN STATE CUSTODY

### (Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Eric L. Gonzalez_ , declare:

I am over 18 years of age and a party to this action. I am domiciled at the Correctional Training Facility (CTF), a California State Prison, in the county of Monterey. The address at this facility is; P.O. Box 689, Soledad, California 93960

On _09 / 29_ ,20_25_, I served the attached:

_Plaintiff's Opposition to Motion For Summary Judgment_

On the parties herein by placing true and correct copies thereof, enclosed in an envelope, with the postage thereon fully paid, in the United States Postal Mail Box so provided at the above named correctional institution in which I am presently domiciled.
The envelope(s) were addressed as follows:

_Department of Justice_
_Attn: Isha Vazirani, Deputy A.G._
_455 Golden Gate Ave., Ste.11000_
_San Francisco, CA 94102-7004_

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at CTF on this date: _09/29_ ,20_25_

Signature: _[signature]_

### Prison Mailbox Rule

Under the "Prison Mailbox Rule" a prisoner's legal document is deemed filed for statute of limitation purposes when he hands it over to prison authorities for mailing. _Houston v. Lack (1998) 487 U.S. 266, 274; Huizar v. Carey, (9th Cir. 2001) 273 F.3d 1220, 1222._ The mailbox rule applies to prisoners in both federal and state courts. _Huizar, 273 F.3d at p. 1223._