UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERIC L. GONZALEZ,

Plaintiff,

v.

SEAN TUMACDER,

Defendant.

Case No. 24-cv-06675-RFL (PR)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dkt. No. 17

## INTRODUCTION

Plaintiff Eric Gonzalez alleges in this 42 U.S.C. § 1983 action that Defendant Tumacder violated his Free Exercise, RLUIPA, and due process rights by denying his request for family visits and his request to have his security status lowered. Defendant Tumacder moves for summary judgment. Gonzalez has filed an opposition and Defendant has filed a reply.

Defendant's summary judgment motion is GRANTED. The denial of Gonzalez's request for family visits was consonant with clear prison regulations, which are reasonably related to legitimate penological interests of security. Therefore, Gonzalez's Free Exercise claim cannot succeed. The denial also did not substantially burden his religious exercise, and therefore there was no RLUIPA violation. Also, because Defendant had no authority to lower his security status, there was no due process violation. Defendant is also entitled to qualified immunity.

## BACKGROUND

Gonzalez is a California state prisoner serving a sentence of 31 years to life with the possibility of parole pursuant to a conviction for attempted kidnapping (Cal. Penal Code §§ 664/207). (MSJ, Nicassio Decl., Dkt. No. 17-13 ¶ 13.) He previously served a sentence

1

pursuant to four rape convictions (Cal. Penal Code § 261).  (*Id.* ¶ 11.)  Gonzalez is classified in prison as a sex offender, with an "R" custody-suffix, "VIO" administrative determinant and a placement score of 19.  (*Id.*, Vazirani Decl., Ex. E, G.)

On January 9, 2024, Gonzalez appeared at a hearing before the Post-Board Unit Classification Committee at CTF-Soledad, after he had appeared before the Board of Parole Hearings.  (Compl., Dkt. No. 2 at 3.)  Defendant Tumacder, who was then a Correctional Captain at CTF, presided over the hearing.  (*Id.*)  At such hearings, correctional staff review prisoners' case factors "to ensure they were properly endorsed to institutions and housed."  (MSJ, Tumacder Decl. ¶ 2.)  Also at such hearings, parole denial is documented and prisoners are informed that they were denied parole.  (*Id.* ¶ 3.)

Gonzalez asked at the hearing to be allowed to participate in the CDCR's family visiting program.  (Compl., Dkt. No. 2 at 3.)  Defendant told Plaintiff that he was ineligible for the program because of his sex-offender status.  (MSJ, Tumacder Decl. ¶ 4.)  State regulations prohibit family visits for prisoners who are convicted of any sex offense.  15 Cal. Code of Regs. § 3177(b)(1).

Gonzalez also asked that his custody restrictions be lowered.  Defendant denied the request because his sex-offender status barred him from having his placement score lowered below 19.  (MSJ, Tumacder Decl. ¶ 6.)  Furthermore, state regulations decree that such a request can only be considered at an annual classification review, and therefore Defendant had no authority to consider such a request at a Post-Board United Classification Hearing.  15 Cal. Code of Regs. § 3375.2(b)(28)(J).  Gonzalez testified at his deposition that he understood the state regulations and CDCR policies.  (MSJ, Plaintiff Depo., Dkt. No. 17-3 at 20, 22-23, 26.)[1]

Gonzalez states that he is a Christian and that privately praying with his family members is a practice of his religion.  He contends that Defendant's denial of his request to participate in the family visiting program violated his free exercise rights under the First Amendment and his

---

[1] All citations to page numbers in filings on the docket refer to ECF pagination.

statutory rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc-1(a), 2000cc-2(b).  He also claims that Defendant violated his right to due process by refusing to lower his custody restrictions.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal

quotation marks omitted).

## DISCUSSION

Gonzalez claims that Defendant's actions violated (1) his right to the free exercise of religion under the First Amendment; (2) his statutory rights under RLUIPA; and (3) his due process rights.

### I.    Free Exercise of Religion

Prisoners retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). But a prisoner's right to free exercise of religion "is necessarily limited by the fact of incarceration," *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993) (citing *O'Lone*, 482 U.S. at 348). "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015.) "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

"To ensure that courts afford appropriate deference to prison officials," the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. A prison regulation that impinges on a prisoner's constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* sets forth four factors to be balanced in determining such validity: (1) whether there is a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right that remain open to prison inmates"; (3)

whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives." *Id.* at 89-90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

"We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.*

### a.    First *Turner* Factor

Under the first *Turner* factor, a court must determine whether there was a "valid, rational connection" between the prison's regulation and the legitimate penological interest put forward to justify it. *Id.* at 89. "Family visits shall not be permitted for incarcerated persons convicted of . . . any sex offense." 15 Cal. Code Regs. § 3177(b)(1). This regulation bears a rational relationship to a legitimate penological interest. As stated in the regulations, the purpose of restricting family visitation is to "maintain order, the safety of persons, the security of the institution/facility, and required prison activities and operations." *Id.* § 3177(b)(1)(D). The Supreme Court upheld a prison restriction on child visitation because it was related to maintaining internal security, reducing the number of visitors, and protecting child visitors from exposure to sexual or other misconduct. *Overton*, 539 U.S. at 133.

Gonzalez contends that the regulation is not rationally related to a legitimate purpose. He asserts that it is contrary to the state's rehabilitative objectives; sex offenders were previously allowed participate in the family visiting program prior to the exclusion of all sex offenders under section 3177(b)(1); and the regulation is applied in a discriminatory manner. Given the undisputed facts in the record, Gonzalez has not carried his burden to show that the regulation fails constitutional scrutiny. Virtually any regulation will be either overinclusive or underinclusive. That is not enough to make it unconstitutional as insufficiently related to

5

legitimate goals of a corrections system.  Nor is it sufficient for Gonzalez to point out that the CDCR previously allowed sex offenders to participate in the program.  The prison authorities may rationally take a variety of approaches to ensure safety during family visitation.

Gonzalez contends the regulation is applied inconsistently and in a discriminatory fashion.  He states that while it applies to all persons convicted of sex offenses, it does not apply to prisoners who have been convicted of murder or other dangerous persons (such as those in Security Threat Group 1).  (Opp., Dkt. No. 18 at 16.)  The regulation does bar prisoners who have been "convicted of a violent offense where the victim is a minor or family member."  15 Cal. Code Regs. § 3177(b)(1).  It bars various prisoners who pose grave security concerns.  *Id.* § 3177(b)(2).  Regardless, even if the regulation is underinclusive, Gonzalez has failed to produce evidence sufficient to raise a genuine dispute as to whether the regulation is so underinclusive as to be lacking a rational connection to a legitimate penological goal.

Furthermore, the regulation here is content-neutral.  "We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression."  *Turner*, 482 U.S. at 90.  Here, the regulation bars all family visits for any purposes whatever, and therefore operates without regard to the content of the expression.

The first *Turner* factor weighs in favor of Defendant.

**b.      Second *Turner* Factor**

Under the second *Turner* factor, a court considers whether the prisoner has "alternative means by which he can practice his religion" or is "denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993).  "The relevant inquiry under this factor is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, we are to determine whether the inmates have been denied all means of religious expression." *Id.*  877.

Gonzalez testified at his deposition that he is able to practice his religion while incarcerated, such as by respecting women, not lying, engaging in private fasting, praying, and

reading the Bible.  (MSJ, Gonzalez Depo., Dkt. No. 17-3 at 8-10.)  This record shows Plaintiff has "retained the ability to participate in other significant rituals and ceremonies of [his] faith" and therefore has means of expressing his religion.  *Ward*, 1 F.3d at 877.  Gonzalez does not discuss the second *Turner* factor in his opposition, and therefore has not shown any reason it should weigh in his favor.  Accordingly, the second *Turner* factor weighs in favor of Defendant.

      **c.**        **Third *Turner* Factor**

Under the third *Turner* factor, a court considers the "impact [the] accommodation . . . will have on guards and other inmates, and on the allocation of prison resources generally."  *Ward*, 1 F.3d at 878 (citing *Washington v. Harper*, 494 U.S. 210, 225 (1990)).

Defendant contends that allowing Gonzalez to participate in the family visiting program would violate state regulations and "jeopardize the institutional safety the regulations intend to maintain."  (MSJ, Dkt. No. 17-1 at 17.)

Gonzalez avers that his participation would not negatively affect guards or other prisoners because he maintains good relationships with both staff and other prisoners, he has a low risk for violence, he is in the "maintenance stage of change," has not "acted in violence" during his 28-year incarceration, has learned to manage his negative emotions and impulses, and has "successfully completed numerous self-help programs that addressed his offending."  (Opp., Dkt. No. 18 at 19.)  He further contends that he is housed within a secured perimeter that is directly under a gun tower.  (*Id.*)  Also, his participation would not impact prison resources because prisoners are required to provide all food for the family visit, no additional staff would have to be used because only a "set number of inmates are allowed to participate in family visits," and "family visiting is located right under a 'gun tower.' "  (*Id.* at 20.)

Even construing the evidence in Gonzalez's favor as to the progress he has made in reducing his risk level, the prison has an institutional interest in allocating its resources to limit reassessments of inmate risk levels to the standardized annual classification review.  Gonzalez has not introduced evidence to refute this interest.  He points to a May 2025 Comprehensive Risk Assessment (CRA).  (Opp., Plaintiff Decl., Dkt. No. 18-1 ¶ 26; Dkt. No. 18-1 at 29-30.)  But the

May 2025 CRA was written well after the January 2024 events at issue in this suit.  It would not have been available to Defendant when Gonzalez's request was denied.  While the CRA may serve Gonzalez at an annual classification review, where such evidence can be examined by persons with authority to change his custody status, it is not relevant to the present suit.

Also, Gonzalez's estimation that additional staff would not be required and that safety can be maintained is based on speculation, not on evidence such as how many family members he would have and how many security guards would be needed.  His estimation is not sufficient to create a genuine dispute of material fact.  Accordingly, the third *Turner* factor weighs in favor of Defendant.

### d.        Fourth *Turner* Factor

Under the fourth and final *Turner* factor, whether the regulation is an "exaggerated response" to the prison's concerns, the prisoner must show there are "obvious, easy alternatives" to the regulation that "fully accommodates the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 90-91.

Gonzalez contends that there is an obvious easy alternative to the regulation.  "All prison officials would have to do is simply apply [T]itle 15 § 3177(b)(2) categorial list to sex offenders, as to does to all other inmates applying to [*sic*] family visiting."  (Opp. Dkt. No. 18 at 21.) "Thus, any security concerns about Gonzalez's participation in family visiting could easily be addressed in his annual classification hearing to determine whether he qualifies under [T]itle 15 § 3177(b)(2)'s security categories."  (*Id.*)

Gonzalez, however, has failed to submit evidence necessary to show such an alternative would impose only a de minimis cost to valid penological interests, including the safety of visitors, other prisoners, and staff.  He has thus not raised a genuine issue of material fact.  Also, the proposed alternative would necessitate altering the regulations themselves to provide prison officials with the necessary authority, which Defendant cannot do on his own.  Accordingly, the fourth *Turner* factor weighs in favor of Defendant.

Even viewing the evidence in the light most favorable to Plaintiff, he has failed to demonstrate the existence of a "genuine issue for trial" as to his Free Exercise claim. *Anderson*, 477 U.S. at 249. The four *Turner* factors weigh in favor of Defendant. Accordingly, Defendant is entitled to judgment as a matter of law, and his motion for summary judgment as to this claim is GRANTED.

## II.    RLUIPA

"To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a 'religious exercise,' and (2) the State's actions have substantially burdened that exercise." *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015) (citing *Shakur v. Schriro*, 514 F.3d 878, 888-89 (9th Cir. 2008)). "If the prisoner satisfies those elements, then the State must prove its actions were the least restrictive means of furthering a compelling governmental interest." *Id.* (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

"[A] substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotation marks and citation omitted). In determining whether there is a substantial burden, a court must consider the totality of the circumstances. Factors to consider include whether the government's reasons for denying the request were arbitrary, and whether the plaintiff has "ready alternatives or whether those alternatives would require substantial uncertainty delay, or expense." *Spirit of Aloha Temple v. Cnty. of Maui*, 132 F.4th 1148, 1156 (9th Cir. 2025). "[W]hether [the plaintiff's] religious exercise was 'substantially burdened' is a legal determination, and it [is] error for the district court to submit that issue to the jury." *Id.* at 1154-56. Here, Gonzalez has not carried his burden to make the required showing. Gonzalez has not shown that the denial of the request was arbitrary. The undisputed evidence is that prison regulation applies to all persons who have been convicted of sex offenses, and that this rule has a reasonable relationship to important safety concerns that are difficult for prison officials to otherwise address. Also, Gonzalez has not shown that he lacks ready alternatives, such as praying privately with other Christians at prison and praying with his family over the

9

telephone. Nor has he shown that those alternatives would be inadequate for his religious needs or that they would impose substantial uncertainty, delay, or expense on him. Under the totality of circumstances, the Court concludes as a matter of law that Gonzalez has not shown a substantial burden on his religious exercise.

Defendant's motion for summary judgment is GRANTED on the RLUIPA claim.

## III.    Due Process

Gonzalez's claim that Defendant violated his due process rights by denying his request to lower his custody restrictions cannot succeed on the undisputed record. As an initial matter, Defendant lacked the authority under state law to grant such a request, which can only be considered at an annual classification review, not at a Post-Board United Classification Hearing. 15 Cal. Code Regs. § 3375.2(b)(28)(J) ("An incarcerated person who has a VIO administrative determinant . . . shall be eligible for consideration of removal of an existing VIO during the annual classification review.") Gonzalez has not presented any evidence that the annual classification review process is inaccessible to him or otherwise fails to satisfy his due process rights. As such, Defendant cannot be held liable for a due process violation when he lacked the authority to grant Gonzalez's request and there were other mechanisms available to handle such requests.

Also, Gonzalez's convictions for sex crimes render him ineligible to be housed in a lower level of security, such as at a Level I facility. 15 Cal. Code Regs. § 3375.2(a)(2). His convictions require that he have a placement score of no lower than 19, a fact Gonzalez acknowledged at his deposition. (MSJ, Plaintiff Depo., Dkt. No. 17-3 at 23-25.)

Gonzalez also claims that Defendant violated his due process rights by refusing to allow him to present evidence to contest the evidence used by Defendant to maintain his security level. (Compl., Dkt. No. 2 at 3-4.) Again, no due process violation occurred. If Defendant had no authority to grant his request, it makes no sense to require Defendant to allow Gonzalez to present evidence in support of his request.

Plaintiff also claims that Defendant's refusal to review his documents constitutes an atypical and significant hardship "because there is a likelihood Gonzalez will serve additional time in prison for not meeting the Board's lower custody level recommendation." (Opp., Dkt. No. 18 at 27.) It also exposed him to a likelihood of being attacked by other prisoners, such as happened when a prior cellmate attacked him after seeing his sex offender determinant on documents. (*Id.* at 28.) These claims appear only in the opposition, and not in the complaint and therefore are not cognizable here. Even if they were properly before the Court, it remains true that Defendant had no authority to consider such evidence or grant a request to lower Gonzalez's custody status.

Defendant's motion for summary judgment on this claim is GRANTED.

## IV.    Qualified Immunity

Defendant contends that he is entitled to qualified immunity. (MSJ, Dkt. No. 17-1 at 22.) The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show that the official's conduct violated a constitutional or statutory right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence). "[I]f no constitutional [or statutory] right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional or statutory right? *Saucier*, 533 U.S. at 201; *see Martin v. City of Oceanside*, 360 F.3d 1078, 1082 (9th Cir. 2004) (in performing the initial inquiry, court is

11

obligated to accept plaintiff's facts as alleged, but not necessarily his application of law to the facts; the issue is not whether a claim is stated for a violation of plaintiff's constitutional or statutory rights, but rather whether the defendants actually violated a constitutional right) (emphasis in original).  "If no constitutional [or statutory] right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Defendant is entitled to qualified immunity.  The facts do not show that Defendant violated a constitutional or statutory right, for the reasons stated above as to the free exercise, RLUIPA, and due process claims.  Also, even if Defendant violated a right, it would not be clear to a reasonable officer that his actions were unlawful:  the regulations clearly forbade the request, and Defendant had no authority to override the regulations.

**CONCLUSION**

Defendant's motion for summary judgment is GRANTED.  (Dkt. No. 17.)  The Clerk shall terminate Dkt. No. 27, enter judgment in favor of Defendant, and close the file.

**IT IS SO ORDERED.**

**Dated:**  May 21, 2026

RITA F. LIN
United States District Judge

12